UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Argo Global Special Situations Fund; Argo Distressed Credit Fund; Black River EMCO Master Fund Ltd; Black River Emerging Markets Credit Fund Ltd.; BlueBay Multi-Strategy (Master) Fund Limited; BlueBay Specialised Funds: Emerging Market Opportunity (Master) Fund; CarVal (CVI GVF (Lux)) Master S.a.r.l; Standard Americas, Inc.; and Standard Bank Plc,<br><br>        Plaintiffs,<br><br>v.<br><br>Wells Fargo Bank, N.A., as Indenture Trustee; Tristan Oil, Ltd., a British Virgin Islands Company; GLG Atlas Macro Fund; Renaissance Securities (Cyprus) Limited; Vision Advisors III Limited; and Sputnik Group Ltd.,<br><br>        Defendants. | Civil No. 10-3614 (SRN/JJG)<br><br>**MEMORANDUM OPINION AND ORDER** |

Michael B. Fisco and Michael M. Krauss, Faegre & Benson LLP, 90 South Seventh St., Suite 2200, Minneapolis, MN 55402, for Plaintiffs.

Anthony B. Ullman, Salans LLP, Rockefeller Center, 620 Fifth Avenue, New York, NY 10020-2457; and Jon S. Swierzewski, Larkin Hoffman Daly & Lindgren Ltd., 1500 Wells Fargo Plaza, 7900 Xerxes Ave. South, Minneapolis, MN 55431-1194, for Defendant Tristan Oil, Ltd.

Joseph T. Dixon, Jr., and John N. Bisanz, Henson & Efron, P.A., 220 South Sixth St., Suite 1800, Minneapolis, MN 55402-4503; and Michael E. Wiles, Christopher K. Tahbaz, Lisa Howley, and Natalie L. Reid, Debevoise & Plimpton LLP, for Defendants GLG Atlas Macro Fund; Renaissance Securities (Cyprus) Limited; and Vision Advisors III Limited.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the motions to dismiss brought by Defendant Tristan Oil, Ltd. (Doc. No. 25), and by Defendants GLG Atlas Macro Fund, Renaissance Securities (Cyprus) Limited, and Vision Advisors III Limited (Doc. No. 56). For the reasons stated below, this Court grants the motions insofar as they seek dismissal for lack of subject-matter jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs brought this action alleging improprieties in the issuance of new promissory notes to provide additional financing for Defendant Tristan Oil (and, indirectly, to its operating affiliates, TNG and KPM) that would undermine the value of Plaintiffs' existing investment in Tristan Oil.[1] Plaintiffs are holders of promissory notes issued on December 20, 2006 and June 7, 2007 ("Existing Notes"). (Doc. No. 1, at 1.) The Existing Notes were issued pursuant to an Indenture dated December 20, 2006 between Tristan Oil, and TNG and KPM, who served as guarantors of Tristan Oil's obligations on the Existing Notes. (Id. ¶ 1.) Defendant Wells Fargo Bank, N.A. serves as Trustee under the Indenture. (Id.)

In June 2009, Tristan Oil issued additional notes ("New Notes") to Defendants GLG Atlas Macro Fund, Renaissance Securities (Cyprus) Limited; Vision Advisors III Limited, and Sputnik Group Ltd. (collectively, the "New Holders"). Unlike the Existing

---

[1] The Complaint alleges that Tristan Oil is owned entirely by Anatol Stati and "exists only to finance the operations of two Kazakh oil and gas companies that Stati owns and controls, Tolkynneftegatz LLP ("TNG") and Kazpolmunay LLP ("KPM")." (Doc. No. 1, ¶ 24.)

Notes, which were issued at or near their face (i.e., "par") value to Plaintiffs (collectively "Existing Holders"), the New Notes were issued at a significant discount to their par value. Tristan Oil sold $111,110,000 in New Notes to Laren Holdings, Ltd. for only $30,000,000. Plaintiffs allege that Laren Holdings, an "entity shrouded in secrecy," is affiliated with Tristan Oil. (Doc. No. 1, ¶ 2.) They further allege that although Tristan Oil sold the New Notes to Laren, "they were not in fact issued to Laren," but rather were "originally issued to multiple holders." (Id. ¶ 42.) The Complaint alleges that this "insider transaction materially increased both Tristan's debt load and its risk of default." (Id. ¶ 2.) And, in fact, Tristan defaulted on its July 1, 2010 interest payment. (Id.)[2]

Thus, the New Holders seek damages, as well as an injunction which seeks to

---

[2] Although not strictly relevant to the resolution of the present motions on grounds of subject matter jurisdiction, the following background helps frame the general dispute at issue here. The Complaint alleges that when Tristan issued the New Notes to the New Holders, the financial viability of Tristan, KPM and TNG was dubious because the Kazakhstan government had restricted the disposition of KPM's and TNG's assets, and seized all equity interests. (Id. ¶ 2.) Plaintiffs allege that Tristan's owner (and CEO) issued the New Notes in an effort to convert equity to debt and to divert funds to insiders. (Id.) The Complaint further alleges that the New Holders seek to have their Notes merged with the existing Notes so as to render them all fungible and indistinguishable, thereby allowing the New Holders to "foist the New Notes on good faith purchasers who do not know that the New Notes were sold and issued in a fraudulent conveyance." (Id. ¶ 3.) As the Complaint explains, on May 15, 2009, the Kazakh government seized the interests of TNG and KPM, which serve as collateral for the Notes, thereby precluding those entities and their shareholders from disposing of KPM and TNG assets. (Id. ¶ 35.) In short, "Tristan Oil's owner could not remove equity from his companies." (Id.). As a result, Tristan Oil's auditors questioned whether the companies would remain viable. (Id. ¶ 36.) When KPM and TNG curtailed production, their revenues shrank, causing the ratings agencies to downgrade Tristan Oil. (Id. ¶ 38.) The Complaint alleges that Tristan was "plainly aware" it would be hard-pressed to pay off the principal of the $420 million in Existing Notes when they would become due on January 1, 2012, and that issuance of the New Notes would only make it more difficult, if not impossible, to do so. (Id. ¶ 39.)

3

enjoin (1) the Trustee from merging the New Notes with the Existing Notes, and from making any distributions on the New Notes, and (2) the New Holders from selling, transferring, or otherwise disposing of the New Notes to any good faith purchaser for value. They also seek an order avoiding the sale and issuance of the New Notes and equitably subordinating any claims by the New Holders with respect to Tristan Oil.

The Complaint premises federal jurisdiction on diversity of citizenship, in particular, that the matter in controversy exceeds $75,000 and that the "action is between citizens of different states and citizens or subjects of a foreign state are additional parties." (Doc. No. 1, ¶ 20.) Of the nine Plaintiffs, only one, Standard Americas, Inc., being an entity incorporated under the laws of Delaware and maintaining its principal place of business in the State of New York, is a U.S. citizen. (Doc. No. 1, ¶ 12.) (Of the eight others, five are citizens or subjects of the Cayman Islands, two are citizens or subjects of Luxembourg, and one is a citizen or subject of the United Kingdom. (Id. ¶¶ 5-11, 13.)) The Complaint names as Defendants six entities, only one of which, Wells Fargo Bank, N.A., is a U.S. citizen. (Id. ¶ 14.) (The others are citizens or subjects of the British Virgin Islands, Cayman Islands, Cyprus, Bahamas and Russia. (Id. ¶¶ 15-19.))

Tristan and the New Holders (all but Sputnik Group) now each move to dismiss on various grounds, arguing that with respect to subject-matter jurisdiction, diversity is lacking because the sole U.S. Defendant, Wells Fargo, is merely a nominal party.[3]

---

[3] The Court earlier denied a request for preliminary injunctive relief, noting that Plaintiffs had not established that this Court had subject-matter jurisdiction. (Doc. No. 84.)

4

**II.     DISCUSSION**

Both Tristan and the other Defendants assert various grounds in support of their respective motions to dismiss. Because the Court concludes that it lacks subject-matter jurisdiction over this matter, it need not address Defendants' other grounds for dismissal.

**A.     Jurisdictional Standard**

This Court is obligated to dismiss any action over which it lacks federal subject-matter jurisdiction. E.g., Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 94 (1998). On a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the court must first "distinguish between a 'facial attack' and a 'factual attack.'" Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If the movant presents only a facial attack, the court must confine itself to the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). Id. Thus the court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008). Where, in contrast, the movant presents a factual attack, the court may consider matters outside the pleadings and the non-moving party does not have the benefit of the safeguards of Rule 12(b)(6). Osborn, 918 F.2d at 729 n.6. But the motion is not thereby converted into one for summary judgment. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993) (stating that court could not "have transformed the motion to dismiss into one for summary judgment" because "the question of jurisdiction is inappropriate for summary judgment").

### B. Diversity Jurisdiction

The Complaint (which raises no federal questions that would satisfy Section 1331) purports to premise jurisdiction on diversity of citizenship, particularly Section 1332(a)(3). (Id. ¶¶ 20-21 (tracking language of Section 1332(a)(3), although citing Section 1332(a)(1), apparently by mistake).)[4] Under that statute, federal district courts shall have jurisdiction of a civil action (where the matter in controversy exceeds $75,000) between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3).

Under Section 1332(a)(3), jurisdiction is thus confined to situations where there is a U.S. citizen on each side and from different States, plus foreign parties on either or both sides. In re Arrowhead Cap. Mgmt. LLC Class Lit., 712 F. Supp. 2d 924, 929 (D. Minn. 2010) ("'[J]urisdiction cannot be predicated on ...[§ 1332](a)(3) because U.S. citizens are not on both sides of the controversy.'") (quoting U.S. Motors v. Gen. Motors Europe, 551 F.3d 420, 422 (6th Cir. 2008)).

Here, the dispute regarding subject-matter jurisdiction centers entirely on the status of Defendant Wells Fargo.[5] Diversity jurisdiction under Section 1332(a)(3) is proper only

---

[4]     The Complaint references Section 1332(a)(1), but there seems to be no dispute that Plaintiffs in fact allege jurisdiction under Section 1332(a)(3) because they allege that Plaintiff Standard Americas is a citizen of Delaware and New York and Defendant Wells Fargo is a citizen of South Dakota, such that "the action is between citizens of different states *and citizens or subjects of a foreign state are additional parties*." (Id. §§ 20, 21 (emphasis added).)

[5]     As noted above, there is no dispute that Plaintiffs include one U.S. citizen, Standard Americas, Inc., an entity incorporated under the law of Delaware, with its

(continued...)

if Wells Fargo Bank, as the sole U.S. Defendant, is actually a real party to this action.

     **C.**     **Wells Fargo Is A Nominal Party**

Although Plaintiffs named Wells Fargo as a Defendant, the other Defendants argue that Wells Fargo is merely a nominal party whose citizenship must be disregarded for purposes of evaluating subject-matter jurisdiction.  Long ago, the Supreme Court "established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."  Navarro Savings Ass'n v. Lee, 446 U.S. 458, 460 (1980).  "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  Id. at 461.[6]  As the only "Defendant" alleged to be a U.S. citizen, Wells Fargo's status as a

---

    [5](...continued)
principal place of business in the State of New York.  (Doc. No. 1, ¶ 12.)  The remaining Plaintiffs are citizens or subjects of foreign states.  (Id. ¶¶ 5-11, 13.)  With respect to Defendants, only one, Wells Fargo Bank, N.A., is a U.S. citizen.  (Id. ¶ 14.)  The other five Defendants are each citizens or subjects of a foreign state.  (Id. ¶¶ 15-19.)

    [6]    In Navarro, the Court then addressed whether eight individual trustees of a business trust, who were suing in their own names, were the real parties in interest such that diversity would be evaluated according to the trustees' citizenship as opposed to that of the trust's beneficiaries.  446 U.S. at 458.  The Court held that such trustees, not the trust beneficiaries, were the real parties for purposes of diversity jurisdiction because those trustees could "take legal title to trust assets," could "invest those assets for the benefit of the shareholders," and could "sue and be sued in their capacity as trustees."  Id. at 464 ("They have legal title; they manage the assets; they control the litigation.").  The Court concluded they were "active trustees whose control over the assets held in their names is real and substantial," not "naked trustees."  Id. at 458, 459, 464 ("[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.").  Thus, the issue in Navarro was not "whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State, but the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the

                                                                                                (continued...)

genuine Defendant–a "real party in interest"–is thus essential to jurisdiction under Section 1332(a)(3).

In United States Fidelity & Guaranty Co. v. Sweeney, the Eighth Circuit addressed the concept of a nominal Defendant in the context of the appellate rule that all parties with an interest in the judgment or order on appeal must be made parties to the appeal (unless properly severed).  80 F.2d 235, 238 (8th Cir. 1935).  But "nonjoinder is not fatal if the party not joined has only a nominal interest."  Id.  The bankruptcy trustee of a construction company filed suit to set aside the transfer of certain funds from the bankrupt company to the surety on the performance bonds the company had issued.  The judgment and decree was issued against the surety and a trust company, but only the surety appealed.  Id.  The trust company had admitted the funds were deposited with it and that

---

⁶(...continued)
real parties to the controversy."  C.T. Carden v. Arkoma Assocs., 494 U.S. 185, 191 (1990).  (The Court explained that, with one minor exception, it consistently has "firmly resisted extending [the rule that only a corporation's citizenship is measured by the entity itself] to other entities."  Id. at 189.  Thus the citizenship of a limited partnership, which consists of general and limited partners, "depends on the citizenship of 'all the members,' 'the several persons composing such association,' [and] 'each of its members.'"  Id. at 195-96 (internal citations omitted).)  Here, however, there is no issue, as there was in C.T. Carden, of how to measure the citizenship of a particular artificial entity such as a national banking association.  Nor is there any issue, as there was in Navarro, of whether the real parties in interest with respect to a trust, are the beneficiaries of the trust rather than any individual trustee or trustees.  Rather, the issue concerns Wells Fargo's *role* in this litigation, that is, whether, as indenture trustee, it is a real party in interest in an action by certain holders of notes issued by a corporation brought against that corporation and the holders of subsequently-issued notes where the plaintiffs allege no wrongdoing by the trustee.  Pesch v. First City Bank of Dallas, 637 F. Supp. 1530, 1536-37 (N.D. Tex. 1986) (analyzing "the respective roles played in this lawsuit by" defendants and concluding that they were nominal because plaintiff did not seek "any relief against [them] other than to preclude them from performing a duty they are required to perform" under state law).

both the bankruptcy trustee and the surety claimed the funds. The Eighth Circuit concluded that it need not dismiss the appeal for lack of a real party to the dispute because the trust company "had no substantial interest in the controversy. It was a mere stakeholder, and as such was only a nominal party." Id.

In general, "a party whose role in a law suit is that of a depositary or stakeholder is a formal or nominal party." Colman v. Shimer, 163 F. Supp. 347, 350 (W.D. Mich. 1958). Thus, a trustee or agent is merely a formal or nominal party "where, though a trustee, agent or depositary has possession of property or funds[,] rights in which are the subject of litigation, he holds them merely in a subordinate or possessory capacity as to which there is no dispute." Id. at 351. In short, a nominal defendant is one "'against whom no real relief is sought.'" Thorn v. Amalgamated Transit Union, 305 F.2d 826, 833 (8th Cir. 2002) (quoting Pecherski v. General Motors Corp., 636 F.2d 1156, 1161 (8th Cir. 1981)). In other words, "[a] defendant is nominal if there is no reasonable basis for predicting that it will be held liable." Shaw v. Dow Brands Inc., 994 F.2d 364, 369 (7th Cir. 1993). Thus, the issue is whether Plaintiffs assert any claim of wrongdoing against Wells Fargo. Rose v. Giamatti, 721 F. Supp. 906, 917 (S.D. Ohio 1989) (finding baseball team to be a nominal party where player, in dispute with Commissioner, alleged no wrongdoing against team that player also named as a defendant).

As Defendants observe, the Complaint directs five of its six counts against either Tristan Oil alone (Counts I and IV), Tristan Oil and the New Holders (Counts II and III), or the New Holders alone (Count VI). The remaining count, "Count V (Injunctive

Relief)," discloses no separate cause of action but rather only specifies a particular form of relief that Plaintiffs seek, that is,

> an injunction: (1) permanently enjoining the Trustee from merging the New Notes with the Existing Notes; (2) permanently enjoining the Trustee from making any distributions on the New Notes; and (3) permanently enjoining the New Holders from selling, transferring, or otherwise disposing of the New Notes.

(Doc. No. 1, ¶ 94.)[7] The Complaint's Prayer For Relief repeats this request for injunctive relief in addition to seeking an award of damages, and an order avoiding the sale and issuance of the New Notes and directing that the claims of the New Holders be equitably subordinated with respect to Tristan Oil. (Id. at 28.) Defendants thus argue that Wells Fargo is only a nominal defendant, such that there is no diversity jurisdiction under Section 1332(a)(3).

As Plaintiffs freely concede, and as their Complaint reflects, they do not allege any wrongdoing by Wells Fargo, but nevertheless maintain that Wells Fargo is a real Defendant in this action because

> Wells Fargo stands at the epicenter of this dispute. As a fiduciary to all Holders, Wells Fargo has a continuing duty under the Indenture and stake in the outcome of this action. Specifically, Wells Fargo is the party with the duty to be enjoined. *All rights and remedies arising from and relating to this action flow through the Trustee*, and its resolution will dictate how Wells Fargo exercises its duty under the Indenture to protect the interests of the Holders in light of the continued Events of Default.

---

[7] Plaintiffs contend that dismissal or removal of Count V "would in no way alter the relief sought against Wells Fargo, diminish its stake in the outcome or affect the exercise of its fiduciary duties in relation this litigation." (Doc. No. 90, at 33 n.6.) Plaintiffs' argument, however, simply serves to emphasize that they do not allege any wrongdoing by Wells Fargo.

(Doc. No. 90, at 28 (emphasis added).) But even assuming that such allegations are true, Wells Fargo remains a nominal Defendant regardless of the fact that the remedies might "flow through" it.

Undeterred by their concession that they allege no wrongdoing by Wells Fargo, Plaintiffs argue that "in contrast to the escrow agent with no stake in the litigation, and who simply awaits direction as to the release of funds that will end its involvement," Wells Fargo is a real party to the dispute because "[t]he outcome here will . . . dictate how Wells Fargo exercises its discretion in performing its post-default duties." (Id. at 31.)[8] Plaintiffs contend that, should they prove successful in this action, "Wells Fargo must be involved in constructing and implementing relief that is appropriate and fair to all Holders," and "also will be responsible for protecting the interests of innocent Holders." (Id. at 30-31.) The judgment Plaintiffs seek "would directly enjoin Wells Fargo and require action that only it can take," for example, cancelling the New Notes, and subordinating payment on the New Notes to payment on the Existing Notes. (Id. at 31-32.)

They thus note that this is not a case where the nominal party in possession of disputed funds could simply deposit those funds with the court, because an indenture trustee, upon an event of default, must exercise its specialized expertise in satisfying its "discretionary post-default responsibilities under the Indenture." (Id. at 32-33.) Although

---

[8] Plaintiffs also allege that "[w]ithout Wells Fargo as trustee, Tristan could not access the corporate debt market and the Notes could not issue." (Id. at 29.) Perhaps so, but the fact that Tristan required an indenture trustee to raise the financing at issue does not change the fact that Plaintiffs have alleged no wrongdoing by Wells Fargo.

11

Plaintiffs characterize Wells Fargo's role as "relatively ministerial" "[u]ntil an event of default exists under the Indenture," they claim that after a default "the Trustee has a fiduciary duty to represent the interests of all Holders," and the authority to pursue remedies against Tristan, KPM, and TNG.  (Id. at 12-13.)  Thus,

> [b]ut for the fact that the recipients of Tristan's fraudulent conduct are Holders of Notes, the Trustee would be the plaintiff in this action seeking relief against Tristan for the benefit of all Holders.  The Trustee is a defendant solely because it cannot act to pursue remedies against the New Holders, to whom it owes a fiduciary obligation until such time as the fraud has been proven in this Court.

(Id. at 14.)[9]

The parties here approach the issue, to some extent, in terms of Wells Fargo's duties, that is, whether they are merely ministerial and obligatory or whether they are more substantial and discretionary.  (Doc. No. 90, at 27-33; Doc. No. 44, at 9.)  Granted, in many of the decisions regarding nominal parties, the party deemed nominal was found to have only ministerial and obligatory duties, such as the duty to transfer assets that are

---

[9]      As Plaintiffs further explain, Wells Fargo has been placed in an unusual and difficult position because, as the trustee, it is contending with two sets of noteholders, whose interests are opposed to each other, but to all of whom Wells Fargo owes a fiduciary duty.  In the face of that purported ethical dilemma, it apparently has opted to take no action against the New Holders.  Plaintiffs thus contend that Wells Fargo should be the Plaintiff in this action, cf. Wells Fargo Bank Minnesota, N.A. v. El Comandante Capital Corp., 332 F. Supp. 2d 448 (D.P.R. 2004) (addressing role of plaintiff indenture trustee in bringing action to recover from defaulting party that had issued notes), but because Wells Fargo determined it could not act in light of the ethical dilemma it faces, Plaintiffs were compelled to name Wells Fargo as a Defendant.  Although the present situation might in fact be unusual, the law remains the same:  whether diversity exists is evaluated only with respect to the real parties in interest, not also with respect to merely nominal defendants, and a party, such as Wells Fargo here, against which no wrongdoing is alleged, is only a nominal defendant.

in its possession and over which there is a dispute between *other* parties as to which of them has the legal claim of ownership, to the prevailing party. E.g., Pesch v. First City Bank of Dallas, 637 F. Supp. 1530, 1536-37 (N.D. Texas).[10] But the fact that a nominal party's role in implementing relief would be ministerial was often just a result of the fact that no claims of wrongdoing had been directed at the nominal party. See id. (finding corporation and its transfer agent bank to be nominal where corporate shareholder's dispute was with Swiss entity to which he pledged his shares as collateral).

      Here, in contrast, the Court does not take issue with the assertion that Wells Fargo is not simply a party in possession of, but without any legal claim to, disputed funds or other property. Nor is there any real question that Wells Fargo, upon an event of default,

---

[10]     In the context of securities fraud actions by the Securities and Exchange Commission (SEC), such a nominal defendant is deemed a "relief Defendant." As one court has explained,

> [a] "relief defendant," sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where the person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds.

SEC v. Founding Partners Capital Mgmt., 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009). In the present context, there is, of course, no issue of recovering funds from Wells Fargo on the grounds that it is in possession of such funds but lacks any legitimate claim to such funds. But Wells Fargo remains the paradigmatic "nominal defendant" because Plaintiffs have included it as a Defendant–although freely conceding that they assert no wrongdoing by Wells Fargo and direct no substantive claim against it–precisely because they believe that much of the equitable relief they seek would be directed at Wells Fargo in its capacity as indenture trustee with respect to the Tristan Oil notes. In lieu of possession of funds emanating from illegal activity, Wells Fargo, as indenture trustee, possesses the authority to take various actions with respect to the notes issued by Tristan Oil.

has various powers and duties that, moreover, would likely involve its expertise and discretion. See <u>Wells Fargo Bank Minnesota, N.A. v. El Comandante Capital Corp.</u>, 332 F. Supp. 2d 448, 456-57 (D.P.R. 2004) ("Once default has occurred, a 'prudent' indenture trustee must make countless, discretionary decisions regarding how best to protect the interests of the beneficiaries of the trust.").

Yet the fact remains that Plaintiffs allege no wrongdoing by Wells Fargo, as they do against the other Defendants, and that while Plaintiffs characterize the relief they seek as necessarily going *through* Wells Fargo, the relief they seek is not *from* Wells Fargo, because Plaintiffs do not allege that Wells Fargo engaged in any wrongdoing. Wells Fargo, unlike Tristan, is not the debtor and, unlike the other Defendants, is not a holder of the New Notes. In short, the dispute here is between, on the one side, the Existing Holders and, on the other, the New Holders and Tristan.

Thus, a party such as Wells Fargo, whose post-default duties under the Indenture Trust are plausibly characterized as more than ministerial, is not therefore a real party in interest. Rather, despite its discretionary and extensive obligations as trustee once a default occurs, Wells Fargo remains a nominal Defendant where, as here, the Complaint alleges no wrongdoing by Wells Fargo, and merely seeks to have a portion of the requested remedy "flow through" Wells Fargo as the Indenture Trustee. The real dispute remains one that is only between the Existing Holders (all of the Plaintiffs) and Tristan Oil and the New Holders (all of the Defendants except for Wells Fargo).

Instead, Plaintiffs have included Wells Fargo as a Defendant solely to facilitate the

mechanics of the relief they seek. As Plaintiffs note, some courts have ruled that a real party-in-interest defendant is one who, according to the applicable substantive law, has the duty sought to be enforced or enjoined. (See Doc. No. 90, at 27.) But Wells Fargo's participation in facilitating that relief, should Plaintiffs prevail, would not be a function of Wells Fargo having been found liable on any claim of Plaintiffs' Complaint. Rather, the actions Wells Fargo would take to implement the equitable relief Plaintiffs seek are a function of the Trust Indenture, an agreement Wells Fargo voluntarily entered before this action arose. In short, Wells Fargo's duties upon default do not stem from any non-contractual legal duty that Wells Fargo breached so as to expose it to liability.

A somewhat analogous situation was addressed Alberto-Culver Co. v. Sunstar, Inc., 2001 WL 1249055 (N.D. Ill. Oct. 17, 2001). Plaintiff Alberto-Culver, a manufacturer and distributor of hair care products, entered a joint venture with defendant Sunstar, Inc. to market those products in Japan. Plaintiff sold its rights in certain trademarks to Sunstar, which then entered into a trust agreement under which it assigned the trademarks to defendant Bank One as trustee. Bank One then licensed those trademarks back to Sunstar, the sole beneficiary of the trust.

Under the trust agreement, Sunstar had the exclusive right to manufacture, use, sell and offer for sale in Japan products bearing the Japanese VO5 trademarks. Bank One had no authority to sell the marks, to use the marks or to authorize any party other than Sunstar to use the marks. If Bank One reasonably believed that an act of Sunstar constituted a danger to the value or validity of the ownership or title in the trademarks, it

could suspend the right of Sunstar to use the trademarks (after notice and time to cure).

Sunstar notified Bank One that it intended to use a 'modernized' Japanese trademark. After Sunstar continued to use the new trademark despite Bank One's objection to Sunstar's plan and threat to suspend Sunstar's licensing rights, Bank One terminated Sunstar's rights. Plaintiff then filed an action in state court naming Sunstar and Bank One (among others) as Defendants, and Sunstar removed, claiming that Bank One was a nominal defendant whose citizenship would not preclude removal. (Plaintiff and Bank One were both citizens of Illinois.)

Plaintiff argued that Bank One could not be merely a nominal defendant because it was a party to the agreements at issue and was also the licensor of the trademarks. Id. at *2. The court rejected any contention that being a party to the relevant contract necessarily precluded the party from being nominal. Id. at *3. Plaintiff also contended that Bank One was an active trustee "because it is charged with carrying out the duties and purposes of the trust, as opposed to just holding legal title." Id. The court recognized that "Bank One may bring suit for infringement and may transfer the marks under certain clearly delineated conditions although its discretion in this instance is also limited." Id.

The court found that Bank One's control over the marks did not constitute the substantial control over the trust property so as to render it a real party in interest. Id. at *4. It also distinguished Navarro on the basis that Bank One had made "no attempt to bring an action or control this litigation itself, as did the trustees in Navarro." Id. Finally, and perhaps most relevant here, the plaintiff had "brought no cause of action against Bank

One." Id. "Bank One faces no risk of judgment in this case and will not be affected by the outcome." Id. Although the plaintiff had requested injunctive relief "against Bank One to return the marks to it, this is no different than a request that a bank being used as a depository turn the assets over to the successful party." Id. "Bank One simply cannot incur liability when there is no cause of action against it." Id.

Moreover, the relief Plaintiffs seek, cancellation of the New Notes, would not necessarily require the presence of Wells Fargo as a Defendant towards whom such injunctive relief would be directed. As Tristan contends, the Court could order the New Holders to turn the Notes over to Tristan, and then order Tristan to surrender the Notes to the Trustee with a request for cancellation. (Doc. No. 96, at 3.) Under the terms of the Indenture–and without any injunction issued against it–the Trustee would be required to cancel the New Notes.

In conclusion, because Wells Fargo is only a nominal Defendant, the Court must ignore it for purposes of evaluating diversity jurisdiction, thereby precluding jurisdiction under Section 1332(a)(3), because with respect to the remaining parties, although one Plaintiff is a U.S. citizen, none of the real Defendants is a U.S. citizen.

It might seem that diversity jurisdiction under these circumstances–a U.S. citizen and several foreign Plaintiffs versus several foreign Defendants–could thus be premised instead on Section 1332(a)(2), which permits federal jurisdiction in certain actions between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). But "(a)(2), when read in light of (a)(3), does not permit a suit between

foreigners and a mixture of citizens and foreigners." Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 428 (7th Cir. 1993). "Cases between aliens on one side and aliens and citizens on the other, therefore, do not fit the jurisdictional pigeonhole." Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 499 (3d Cir. 1997). Accord Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V., 391 F.3d 871, 875 (7th Cir. 2004) ("[T]here is no diversity jurisdiction over a case in which there are foreign parties on both sides of the suit and a U.S. citizen on only one side."); Extra Equipamentos E Exportacao Ltda. v. Case Corp., 361 F.3d 359, 361 (7th Cir. 2004) ("The diversity jurisdiction does not extend to a suit in which there is a U.S. citizen on only one side of the suit and foreign parties on both sides.").[11]

### D. DISPOSITION

Although Tristan seeks dismissal without specifying whether such dismissal should be with or without prejudice, the other Defendants expressly seek dismissal with prejudice. (Doc. No. 25, at 1; Doc. No. 44, at 10; Doc. No. 58, at 33.) But because this Court dismisses this action for lack of subject-matter jurisdiction, the dismissal must necessarily be without prejudice, although, of course, the current array of parties would preclude any federal district court from exercising diversity jurisdiction. Fredericksen v.

---

[11] Finally, once it is determined that Wells Fargo is only a nominal Defendant, none of the other bases under Section 1332(a) could support subject-matter jurisdiction. Section 1332(a)(1) applies only to "citizens of different States," with no allowance for any additional parties that are citizens or subjects of a foreign state. (Section 1332(a)(3) is thus an extension of Section 1332(a)(1) insofar as it permits diversity jurisdiction where jurisdiction would be proper under Section 1332(a)(1), and there are additional parties that are citizens or subjects of a foreign state.) And Section 1332(a)(4) is limited to actions brought by a foreign state against "citizens of a State or of different States."

City of Lockport, 384 F.3d 437, 438 (7th Cir. 2004) (explaining that dismissal for lack of subject matter jurisdiction is not with prejudice, but the "jurisdictional disposition is conclusive on the jurisdictional question" such that "the plaintiff cannot re-file in federal court"); see Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001) ("Although the dismissal was without prejudice, 'an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties.'" (emphasis in original)).

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Tristan Oil's motion to dismiss [Doc. No. 25] is **GRANTED IN PART** (insofar as it seeks dismissal for lack of subject-matter jurisdiction) and **DENIED AS MOOT IN PART** (insofar as it seeks dismissal or abstention on any other grounds);

2. The other moving Defendants' motion to dismiss [Doc. No. 56] is **GRANTED IN PART** (insofar as it seeks dismissal for lack of subject-matter jurisdiction) and **DENIED AS MOOT IN PART** (insofar as it seeks dismissal or abstention on any other grounds); and

3. This action is **DISMISSED WITHOUT PREJUDICE**.

Dated: August 30, 2011        s/ Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge